All right, I think with them we're ready for our next case. So Martinez-Mejia v. Barr, and for the petitioner? Hi, Kevin Collins. And you're going to go first, Mr. Collins, is that right? That's right. Good morning, Your Honor. It's Mary Lorenzo here on rebuttal. Okay. And Ms. Hong? Good morning, Your Honor. This is Kari Hong. I'll be the supervising attorney with my video and microphone off in the background. Okay. All right. All right. So, Mr. Collins? Good morning. May it please the Court. My name is Kevin Collins. My partner, Mary Lorenzo, and I are Boston College law students. We are appearing under the supervision of Kari Hong. We represent petitioner Kenia Martinez-Mejia, whom we will refer to as Ms. Martinez. At the outset, the parties agree on remand, but we disagree on the scope of that remand. Before setting the case back to determine if Ms. Martinez qualifies for any relief, this Court needs to announce the proper legal frameworks for AB, Salvadoran woman, and cat. First, AB is a new rule that cannot be retroactively applied. If the rule of law means anything, it means that if there is precedent, you can rely on it. From February 2017 until June 2018, when Ms. Martinez was fighting her case, Ms. Martinez specifically relied on ARCG. In May 2018... Did her behavior change at all because of the precedent? Yes, Your Honor. She had a good legal case, she thought, based on the existing case law. That case law may have changed, but that doesn't ordinarily establish any reliance to interest. Did she do anything? Did she change her behavior in reliance upon the prior case law? Your Honor, my best answer is that at AR332 to 347, her declaration filed in her pre-hearing statement on May 8, 2018. Her factual statement supported the social group, Salvadoran Daughters Unable to Lead Parental Relationships. But in June 2018, AB changed that rule. The Attorney General's decision to overrule a precedent that had been in place for nearly four years, was unexpected and abruptly changed the outcome of her case. Well, that's not really answering the question I'm trying to put to you. Certainly, the legal framework may have changed. Our court has a lot of experience with that because the Supreme Court from time to time changes our legal framework. But that doesn't mean we disregard the Supreme Court's decision and continue to apply what we thought was the law, despite what the Supreme Court said, simply because we think our statement was superior, or because parties may have based their legal arguments on what we said. Now, if there's a reliance interest because somebody changed behavior, did not, for example, file a given motion because our prior case law said they didn't have to file that motion, and now they want to kind of retrospectively or non-proton go back and change their course, sometimes that might be permitted, but it's because somebody did action or did not take action in reliance upon the prior case law. And I don't see anything like that here. So the question I'm trying to put to you is, did your client behave differently in reliance on the prior case law? If your argument is simply based that you like the prior case law better because it leads to a better result, I'm not sure that's very powerful. If you can show me something where she changed her behavior in reliance on her case law, that's something I might be more interested in. So did she change her behavior? Your Honor, the best answer I can give you is that on this record, the IJ and BIA treated AB like a new rule, and they recognized her reliance on ARCG. This is shown at AR 81 in the IJ's opinion. I'm taking your answer now to be an answer to my question, no, that she did not change her behavior. And that's fine. I'll accept that. But understand, I'm putting to you the question of whether she changed her behavior, and I haven't heard anything from you that suggests she did. Okay, Your Honor. Even if you disagree, there are two other issues, two other avenues of relief. On the issue of Salvadoran women, the IJ erred when misapplying Perdomo and Mohammed to the settled facts on the record. The board didn't address Perdomo, correct, in this case? The IJ, Your Honor, the IJ addressed the BIA decision. Hold on, we just lost you there for one second. Sorry, can you hear me now? I had asked you a question about the board. The board, the BIA, did not address Perdomo. Is that correct? Yes, Your Honor, that's correct. However, this court looks at the BIA decision, and when the BIA adopts part of the IJ decision like it did here, the court also looks at that section. Going to the juggler, recognizing a group Salvadoran woman will not let in half the world. It won't even let in half of El Salvador. Only women actually persecuted on this basis can get protection. The IJ got the law right. It properly cited to Perdomo and recognized that, quote, women in a particular country, regardless of ethnicity or clan membership, could form a particular social group, end quote. Size does not matter. The IJ's observation that 98% all women in Somalia, in theory, could be included in a group Somalian females, if they were so persecuted on that basis. Despite having the benefit of Perdomo and Mohammed, the IJ found the group Salvadoran woman too broad and too amorphous. That simply makes no sense. The IJ's rejection of Salvadoran woman because of size and internal diversity is in direct opposition to Perdomo and Mohammed, the very cases it cited. Now, the government calls for remand to let the BIA decide everything. But this court, not the BIA, must first decide the legal question of cognizability, and then the IJ can decide the factual issue of nexus. The IJ had the benefit of Perdomo. Its error was not applying it correctly. Out of deference to the BIA to decide a novel issue, Perdomo stopped short of creating a particular social group of gender plus nationality. But that was 10 years ago, and the court has remanded 10 other cases for the BIA to do this. Deference to the BIA is no longer needed. We're no longer at the first fight. Remanding again will be the 11th fight at the same time. There have been a number of cases that occurred that the agency didn't have when they decided those cases. And we sent them back because they didn't have the benefit of Perdomo at the time they made their decision. There's one or two cases that you list that show that we sent it back when the board made a decision after Perdomo. But, you know, I guess it must be a hard case. Oh, we've just lost our advocate. Who is it? Swami. I see that we've lost. Oh, there he is. He's back. Sorry, Arne. I didn't hear your question. No, it's just that most of our cases, of those cases that you listed in your briefs that we sent back to the BIA where the BIA had a chance to decide this question, many of those cases were sent back because the board did not have the benefit of our decision in Perdomo at the time they rendered the decision in those particular cases. There are a couple of cases where the board's decision was after Perdomo and they didn't decide the question. And we still sent the case back. But, you know, it's a difficult issue, I guess, for the agency, and they just haven't been able to, they haven't yet grappled with it. Right, Your Honor. So we do not know what happened to the other cases that were remanded after Perdomo, but we assume that the government must have also agreed to settle in a manner that avoided any binding authority from the IJ or BIA or to help others. So today we're saying because the continuing parade of remanded cases is resulting in continuing uncertainty, we're asking this court to declare aloud what it had whispered 10 years ago in Perdomo. Rape. Second, rape certainly rises to the level of torture for Kat. The criminal gangs raped Ms. Martinez. The BIA erred in finding reasonable relocation because the rape happened within weeks of her expedited removal to El Salvador. This record is like Ari's. Their internal relocation was unreasonable when a torturer tracked down a Kat applicant and attempted to rape her after she fled and returned to the country. The BIA also erred in finding no acquiescence. When Ms. Martinez reported the gangs raped her, the police refused to take her report. The BIA and IJ found that the police inaction was a resource problem, but it is not. It is corruption and complicity with the gangs. The best case on point is Madrigal v. Holder. Their corruption and efficacy of the government's efforts to curb gang violence is relevant. On this record, both factors compelled finding acquiescence. According to the UNHCR, the police and the gangs work together, and the gangs reportedly have their own infiltrators in the police and the military. In fact, the gangs and police are so coordinated that the Canadian Immigration and Refugee Board found that the gangs are, quote, seen as de facto authorities in many communities, end quote. Applying Avendano, this court has the authority to grant Kat when the agency error is not a misapplication of law, but a failure to properly consider the uncontested facts. On this issue, we are asking the court to grant Kat because the facts compel no other conclusion. If there are no further questions... You're saving some time for your rebuttal? Yes, I am, Your Honor. If there are no further questions, we will leave it to the court. May I reserve my remaining time? Yes. Thank you. We'll hear from the government. Okay. May it please the court, Lindsay Corliss, the respondent. This court should remand this petition for review... Could you hold on one second? I want to make sure that Mr. Collins and Ms. Lorenzo... Yes, Your Honor. Could you just hear us a minute ago? Yes, Your Honor, I could. Yes, I did. Okay, so we're just losing your screenshot. Okay. Okay, Ms. Corliss. Okay. Okay, so this court should remand the petition for review for further proceedings before the agency. First, this court should remand proceedings to allow the agency to directly address petitioners treated to a particular social group, Salvadoran women. Now, the board didn't name that group specifically, and instead it just sort of mentioned, here are two examples, neither of which were Salvadoran women. They were single Salvadoran daughters or daughters of Rogelio Martinez Maldonado, and then indicated that those were two examples of all of the petitioners' groups. Ms. Corliss, could you do me a favor and, as you speak, just slow down a bit? Okay, I'm sorry about that. So the board said that none of the petitioners' groups were sufficiently particular or socially distinct, but didn't name Salvadoran women. Now, it is conceivable that the board intended to include Salvadoran women among the list of proposed groups that didn't meet the standard for a cognizable particular social group. But there's also some reason to believe that perhaps the board's omission was more intentional. And if you look at petitioner's appeal, we're not, and I just wanted to say, we're not arguing that this group wasn't exhausted. It was exhausted. But the way that it was placed in the appeal brief might have led to some confusion. It's actually in a nexus section, and petitioner argued that the immigration judge completely ignored or didn't address Salvadoran women as a group. And so the board didn't comment on that finding, which was undermined by the record, as the immigration judge did address it. But where the board didn't name the group specifically and also didn't even respond to the argument that was centered around that group, it is questionable whether or not the board might have actually missed this group completely. And so the board needs to clarify whether it was even addressing the issue in the first place in its dismissal of petitioner's appeal. Ms. Corliss, hold on. Ms. Corliss, can I just ask you a question on this? Yes. This is Judge Paez. Okay. So in your motion to remand, you just asked, just remand this case to the board, to the agency, because there are issues that need to be further considered by the board. And it was just a blanket motion to remand. Yes. And I gather that in your view the particular social group of Salvadoran daughters and Salvadoran women and all the other kind of connected groups, they need to be looked at together. Is that your position? Well, I guess our position is that even so we know that there is something that the board needs to clarify. There are problems both with the withholding of removal finding and with the denial of cap protection. So we know that there are problems with the board's decision and that this court couldn't and shouldn't affirm the board's decision as it is. Now, if this court were to address the other issues that petitioner asks the court to address, even if petitioner were right on those issues, which, you know, as a brief state, we don't agree with the majority of those arguments, but even if this court were to agree with those arguments, they wouldn't be dispositive of her application for cap protection or of withholding of removal. So if this case goes back to the board, the board has an opportunity to issue a completely new decision. And so it can address those other issues in the first instance. And then petitioner has another opportunity if in the case that the board were to deny or to dismiss her appeal again, she would have the opportunity to petition for review of that decision and get those issues before this court again. So I guess from our point of view, remanding the petition in its entirety makes a lot of sense, as none of the issues that she's discussing beyond the two that we are saying need to be remanded for are going to be dispositive of the application. This is Judge Clifton. It sounds like everybody agrees the case should be remanded. So deny petitions not on the table. The main concern I hear from you now is that if it is remanded, we should reject the request of petitioner to say, for example, hey, we've been waiting 10 years for the board to speak to this court's prior decision. Enough already. The petitioner has urged us to go ahead and decide that ourselves. Or in the CAD issue, the petitioner has pointed to our court's decision of Andano and said, enough already. Ninth Circuit, you go ahead and decide this now. Why shouldn't we follow that advice? Well, look, I can understand why the court would be frustrated. It has been 10 years. I think that the thing is, though, the reason the court hasn't decided it before wasn't to do the agency a favor. It was because the court can't make these determinations, which involve factual findings in the first instance. Now, you know, this court can determine immutability as that's a legal question, but what is socially distinct and what is particular requires a case-by-case, society-specific inquiry into the social distinctiveness or particularity of that group within that country. So the board needs to make those factual findings each time based on each record. So that's sort of the reason why, you know, this court hasn't just gone ahead and done so, because the court can't say that these groups are always going to be particular or socially distinct in every single society. You know, if it's finding that, you know, frequently that the facts are showing that certain groups exist in certain societies, perhaps that would be persuasive evidence for petitioner to put forth in, you know, a new application. But as it is, it still isn't going to be dispositive because those are factual findings. Well, it seems to me that the board's rejection has more to do with the concept of what it takes to be a particular social group. So if we look at Perdomo, for example, the group there I think was what, women in Guatemala. How is that really different from women in El Salvador? Granted, they're different countries, but the concept seems to be what's at issue, not the particular facts on the ground in those two different countries. Well, so actually Perdomo doesn't find that Guatemalan women are a particular social group. Perdomo finds that the agency needs to go back and look at it and analyze it based on that society. It didn't come back up for a new petition for review, so we don't know what kind of inquiry the board did in that case. But this court didn't make that finding on Perdomo. So I actually do think you're right that this is sort of exactly the same sort of scenario. We're talking about a group that is defined by sex and whether or not that is going to meet the standard in a particular society. Guatemala society is very close, it's right next door to us. So I can see where there are going to be a lot of similarities, but Perdomo didn't find that, that Guatemalan women are a particular social group. And the agency really needs to do that factual inquiry for the first time also in this case. Well, I hear you, but I also am concerned about the passage of time. We actually got hit between the eyes yesterday because the Attorney General entered an order in capital cases that cases coming out of Arizona are now subject to a real strict time limit. Our court has six months to deal with an appeal from a capital habeas petition from Arizona. Expecting the BIA to speak to some of these issues in less than ten years doesn't strike me as unreasonable. So why should we keep waiting? I mean, it doesn't strike me as unreasonable either. I agree. We're seeing these cases more often. I certainly agree it would be sensible for them to go ahead and address it. I guess my own frustration with that, though, doesn't really matter because it's not uncommon for an adjudicative body, whether a court or an agency, to kind of put off those harder questions. They're not required to find on every single issue as long as they are addressing the dispositive issues or a dispositive issue. So, you know, it's just not that uncommon for a court to deny or dismiss an appeal based on the settled question or the clearest answer. And so regardless of how I might feel about how long it's taking, it hasn't been impermissible. Now, this case could go back and could be the case in which the board finally goes through that analysis. And you're right. I think someone mentioned that the standard for a particular social group has somewhat changed since PRODOMO was issued as MEVG came out after PRODOMO and kind of discussed some changes in how the agency was assessing the cognizability of a particular social group. But certainly this case could be the one in which the board finally makes that decision. But either way, they haven't done it here. And they do need to grapple with this court's law. They need to grapple with PRODOMO. And they need to specifically state whether or not they even addressed this group in their first decision. And I would also just want to say, like, even if this court were to find, okay, Salvadoran women are a particular social group, this case still needs to be remanded because there are other issues then that come into play. There's no nexus finding regarding whether or not there's a nexus between Salvadoran women and the persecution feared. And in order for her to win on her folding claim, there would have to be that finding. The board never addressed the relocation finding. That finding would also need to be addressed. So whether this court, even if this court were to find, and it shouldn't because it involves factual findings, but if this court were to find that Salvadoran women are a particular social group, it still needs to remand the petition. Did you want to address the torture claim? Yes, yes. So this court should remand proceedings to allow the agency to clarify the basis of its denial of cap protection. Now, neither the board nor the immigration judge specifically mentioned petitioner's prior experience of reporting her rape to the police when it found the petitioner didn't establish that the government would acquiesce to her torture. Here, again, it's conceivable that the agency did consider her past experience but found it not sufficient to meet her burden for establishing that the government would acquiesce in the future. But it didn't properly explain that or demonstrated that it accounted both for her personal experiences and general country conditions when it reached that determination. And the agency needs to weigh those facts in the first instance and at least show some evidence that it did so. And I have one other question for you relating to the proposed initial group that Judge Clifton was referring to, Salvador and Daughters, and AB. I just would like to hear the Attorney General's position. Does AB create a new rule or eliminate any possibility of domestic violence as a basis for a particular social group? It doesn't say that. It doesn't say that at all. It actually says specifically that each group needs to be assessed on a case-by-case basis. And that is actually what ASBG did as well. I would also say that that's not exactly at issue in this particular case because if you look at the Board's decision, they first talk about how these groups the petitioner proposed weren't particular and they weren't socially distinct. And then it goes back and it addresses her argument that the immigration judge should not have applied AB. So the reason that the Board rejected Salvador and Daughters who are unable to leave their parental relationships is because it's not particular and it's not socially distinct. And that's supported by evidence. I mean, if you look at that group, the more you consider it, the more it becomes synonymous with just Salvadoran women. Salvadoran Daughters involves all women in El Salvador. And unable to leave their parental relationships, it becomes a question of what does it even mean to leave a parental relationship? Does it mean you don't live with your parents anymore? Does it mean that you don't have any personal obligation to their parents to visit on holidays or give them money or something like that? Or does it just mean that people are always going to assume or consider you to be someone's daughter? And so when you have something so amorphous like that, it's very unclear who's in the group, who's out of the group. And so we have a group here that doesn't meet the standard of cognizability under any standard, under ARCG or under AB. So there's no real question that AB was misapplied or retroactively applied against the petitioner on that group. All right. Let's see if my colleagues have any further questions. Okay. Okay. Thank you so much. Thank you, Ms. Corliss. There was some time for rebuttal. Your Honors, I have three points. First, on the issue of Salvadoran women, Ventura requires the BIA to have the first bite at factual issues. But cognizability of a particular social group is a legal issue. This court has decided particular social groups in the past. For two examples, in Boa Sedano, this court decided, quote, homosexual men in Mexico, end quote. In Hernandez Montiel, this court decided, quote, gay men with female sexual identities in Mexico, end quote. The government does not declare, or I'm sorry, the government does not provide a single reason why this court should not loudly declare today what it whispered in Perdomo, which is that gender plus nationality is a particular social group. Second, this record shows- Let me ask a question there. I mean, you characterized that as a legal issue, and I understand that. But the interpretation of a statute assigned to an agency is something that the agency under Chevron is entitled to speak to in the first instance. And under Brand X, the fact that our court may have already spoken on that question doesn't rule out the possibility that the agency can speak, and we could be bound to follow the agency. So why isn't it up to the agency in the first instance to decide what particular social group means, what the requirements are? Well, Your Honor, the elements of immutability, particularity, and social distinction are the legal elements for a particular social group. The other elements, nexus and the unwilling or unable prong, are the factual-based inquiries. Ten years ago, Perdomo deferred to the BIA and stopped short of creating a particular social group of gender plus nationality. And in further deference, this court has remanded ten other cases. If we remand again, the BIA would get its 11th bite at the same apple. That's why we are requesting the remedy- But my question accepts that, accepts that proposition, but asks, well, under Brand X, isn't that- Well, my screen has just gone dark completely. Can anybody hear me? Your Honor, yes. Yes. Hello? Can you hear me, Your Honor? I can now. I don't know if you heard me. I just went completely blank for, I don't know, ten seconds. So I apologize. And technology may not have all the bugs worked out yet. I apologize for that. But the question I was trying to put, and I don't know if you could hear me, is that I accept for discussion your proposition. But under Chevron and Brand X, I'm not sure how that excuses us from recognizing the agency's authority to interpret the statute in the first instance. Well, Your Honor, this is no longer the first instance, respectfully. This is now the 11th instance. Well, can you cite any case that says that the ticket to decide expires after ten rides? Your Honor, I cannot. You want this case to be that case? Exactly, Your Honor. Okay. On my second point, this record shows how awkward and artificial it is to separate out and put different harms in different silos. Under CAT, only the rape by the gangs is legally relevant. And under ARCG, only the abuse by her father is legally relevant. But she suffered from all of this abuse for 20 years. Why isn't all of this relevant? Recognizing Salvadoran women as a particular social group is the most intellectually honest and factually accurate way to describe what happened to Ms. Martinez. Third, this Court has to reach all three issues of AB, Salvadoran women, and CAT. Because on remand, there is no certainty that Ms. Martinez is factually eligible. To avoid having this case back at this Court, all remedies which were raised and exhausted below must be settled now. If there are no further questions, with leave of the Court, may I submit the case? Yes, but I just have one sort of not legal issue. I just want to clarify. Ms. Martinez Mejia is out of custody, is that correct? That's correct, Your Honor. Is she able to work? Your Honor, I'm not sure the answer to that question. I believe the answer is no. But with leave of the Court, may I file supplemental briefing within 24 hours? Only if we ask you to, but there's no need for that. I was just curious. Actually, it's a fair question because it came up in connection with the government's motion. I think, I confess I haven't read the opposition in a few days, but it seemed to me you note the concern there that she can't work. And I assume Ms. Corliss is still on the line. Do you have an understanding as to the answer to that question? Can Ms. Martinez work? She's out of detention, it appears, but what's her status in terms of being able to support herself? I don't know if she is working or not. Your Honor, this is Kari Hong. I can speak to that. She is not allowed to work under the conditions of her release from custody. Could they be modified? No, Your Honor. Okay. If there are no further questions with leave of the Court, may I submit the case? Yes. Yes. Thank you very much. Thank you. A number of thanks. One, for your willingness to participate in the Court's pro bono program. It's very helpful. Two, for your willingness to join us in a virtual court. I know it's not ideal, but it's pretty good. And, you know, take care and thank you all again. And that ends our session for today. Thank you. Thank you, Your Honor. Court, for this session, stands adjourned.
judges: Paez, Clifton, Harpool